UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| DJVAN A. CARTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:24-cv-00187-SDN |
| | ) | |
| MAINE STATE POLICE, and | ) | |
| BLAINE SILK, | ) | |
| | ) | |
| Defendants. | | |

## **ORDER**

Plaintiff Djvan A. Carter sued the Maine State Police ("MSP") and Blaine Silk, an officer of the MSP, for violating Mr. Carter's constitutional rights and using unnecessary deadly force when Mr. Silk shot Mr. Carter during an arrest. A state grand jury indicted Mr. Carter for his conduct during that incident. Mr. Carter seeks a judicial declaration that Mr. Silk used unnecessary force during the arrest, injunctive relief ordering the MSP to fire Mr. Silk and ordering Mr. Silk to resign, and compensatory and punitive damages.

Both the MSP and Mr. Silk (in his official capacity) are protected by Maine's Eleventh Amendment immunity. Therefore, Mr. Carter's claims against the MSP and his official-capacity claims against Mr. Silk must be dismissed. Because Mr. Carter's state court criminal case is still pending—he was found guilty after a jury trial but has not been sentenced—the Court abstains from resolving Mr. Carter's remaining individual-capacity claims against Mr. Silk and stays the case.

## FACTS[1]

On May 26, 2023, Blaine Silk of the MSP arrived at the scene of an incident involving Mr. Carter. Mr. Silk did not issue any verbal warning or command to Mr. Carter. Less than one minute after arriving on the scene, Mr. Silk shot at Mr. Carter seven times. One fragment of a .45 caliber bullet struck Mr. Carter in the back, breaking two of Mr. Carter's ribs. A doctor who later evaluated Mr. Carter in the emergency department described Mr. Carter as having a "high probability of imminent or life-threatening deterioration due to [the] gunshot wound." ECF No. 1 at 4. The bullet fragment and other shrapnel remain lodged in Mr. Carter's back. Mr. Carter suffers from post-traumatic stress disorder and anxiety since being shot.

## PROCEDURAL HISTORY

Mr. Carter filed his Complaint on April 17, 2024.[2] ECF No. 1. He moved for appointment of counsel, which the Magistrate Judge denied. ECF Nos. 3, 5. Mr. Carter objected, and the Court overruled his objection. ECF Nos. 8, 11. On August 2, 2024,

---

[1] I draw these facts from "the complaint, documents attached to it, and documents expressly incorporated into it." *Foley v. Wells Fargo Bank, N.A.*, 772 F.3d 63, 72 (1st Cir. 2014). I take those facts as true and draw all reasonable inferences from them. *Alston v. Spiegel*, 988 F.3d 564, 571 (1st Cir. 2021). Mr. Carter attached to his Complaint a letter describing the incident written by the Maine Attorney General, which the Court considers. *Freeman v. Town of Hudson*, 714 F.3d 29, 35 (1st Cir.2013).

Complaints filed pro se, such as this one, must "'be liberally construed' . . . and 'a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). That broad solicitude toward unrepresented parties, however, "does not require [the Court] to conjure up unpled allegations," *Viera v. De Souza*, 22 F.4th 304, 311 (1st Cir. 2022) (quoting *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979)), nor does it permit the Court to "rewrite a petition to include claims that were never presented," *id.* (quoting *Barnett v. Hargett*, 174 F.3d 1128, 1132 (10th Cir. 1999)).

[2] The Court received Mr. Carter's Complaint on May 21, 2024. Because Mr. Carter was in custody in the Penobscot County Jail when he filed his Complaint, the Court considers his Complaint filed on the date of mailing. *Casanova v. Dubois*, 304 F.3d 75, 78–79 (1st Cir. 2002) (adopting mailbox rule for prisoner complaints).

Defendants moved to dismiss Mr. Carter's Complaint for failure to state a claim and lack of jurisdiction. ECF No. 13. Mr. Carter did not oppose the motion.[3]

## DISCUSSION

Defendants argue the Eleventh Amendment immunizes the Maine State Police and Mr. Silk (in his official capacity) against suits for damages. Defendants also argue the Court should abstain from exercising its jurisdiction to resolve remaining claims against Mr. Silk under *Younger v. Harris*, 401 U.S. 37 (1971). The Court addresses each argument in turn.

### I.    Sovereign Immunity[4]

The Eleventh Amendment prohibits federal courts from entertaining suits against a state unless the state consents or waives its immunity. U.S. Const. amend. XI; *Coggeshall v. Mass. Bd. of Registration of Psychologists*, 604 F.3d 658, 662 (1st Cir. 2010). Eleventh Amendment immunity extends to any arm of the state government, including agencies and individual employees acting in their official capacity. *Id.* Moreover, "[s]tates and their agencies are entitled to sovereign immunity 'regardless of the relief sought,'" monetary or equitable. *Poirier v. Mass. Dep't of Correction*, 558 F.3d 92, 97 (1st Cir. 2009) (quoting *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985). If the state has declined to waive immunity or consent to suit, a plaintiff may obtain relief only

---

[3] Though District of Maine Local Rule 7(b) deems objections waived if not filed within 21 days of a motion, "the mere fact that a motion to dismiss is unopposed does not relieve the district court of the obligation to examine the complaint itself to see whether it is formally sufficient to state a claim." *Vega-Encarnacion v. Babilonia*, 344 F.3d 37, 41 (1st Cir. 2003).

[4] Because sovereign immunity is a jurisdictional issue and the relevant facts (in this case, the identity of Defendants) are undisputed, the Court "must credit the plaintiff's well-pleaded factual allegations . . . , draw all reasonable inferences from them in [his] favor, and dispose of the challenge accordingly." *Valentin v. Hosp. Bella Vista*, 254 F.3d 358, 363 (1st Cir. 2001).

against an official-capacity state actor through the *Ex parte Young* exception, which allows plaintiffs to sue for prospective injunctive relief to prevent a continuing violation of federal law. 209 U.S. 123 (1908) (holding plaintiffs may sue state actors in their official capacity for prospective injunctive relief).

Maine has not consented to suit. 14 M.R.S.A. § 8118 ("Nothing in this chapter or any other provision of state law shall be construed to waive the rights and protections of the State under the Eleventh Amendment . . . ."). Maine's retained sovereign immunity covers the MSP, which is an arm of the state government. *Parent v. U.S. Customs & Border Prot.*, No. 11-CV-295, 2012 WL 2567141, at *7 (D. Me. July 2, 2012). Therefore, Mr. Carter's claims against MSP must be dismissed.

As an MSP employee, Mr. Silk enjoys the same protections as the state itself when sued in his official capacity. *Coggeshall*, 604 F.3d at 662. Mr. Carter cannot skirt Mr. Silk's official-capacity immunity through the *Ex parte Young* exception because the exception applies only when a plaintiff seeks prospective injunctive relief "to prevent a continuing violation of federal law." *Green v. Mansour*, 474 U.S. 64, 68 (1985). The exception "does not permit judgments against state officers declaring that they violated federal law in the past." *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993).

Mr. Carter levies three claims against Mr. Silk, and none of them satisfy *Ex parte Young*.[5] First, Mr. Carter seeks a declaratory judgment that Mr. Silk used excessive force.

---

[5] Mr. Carter did not state explicitly whether he sued Mr. Silk in his official or individual capacity. "[C]ourts are not limited by the presence or absence of language identifying capacity to suit on the face of the complaint alone." *Powell v. Alexander*, 391 F.3d 1, 22 (1st Cir. 2004). Instead, courts typically apply the "course of proceedings" test and examine the substance of the pleadings to determine the nature of the claims. *Id.* Here, Mr. Carter seeks punitive damages, which may be sought only against government officials in their individual capacity. *Id.* at 23. But (liberally construing Mr. Carter's pleading) he also seeks

Second, Mr. Carter seeks an injunction ordering Mr. Silk to resign from the MSP. Third, Mr. Carter seeks compensatory and punitive damages.

A declaratory judgment that Mr. Silk used excessive force nearly two years ago is not "prospective" injunctive relief. *Green*, 474 U.S. at 68. The Eleventh Amendment therefore bars the Court from issuing such a plain "declar[ation] that [a state officer] violated federal law in the past." *P.R. Aqueduct*, 506 U.S. at 146; *cf. Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 646 (2002) (allowing suit for declaratory relief under *Ex parte Young* because plaintiffs sought "a declaration of the past, as well as the future" legality of the defendants' actions).

An injunction ordering Mr. Silk to resign from the MSP similarly is barred because it would not "prevent a continuing violation of federal law." *Green*, 474 U.S. at 68. Rather, it appears Mr. Carter seeks Mr. Silk's resignation as a punitive remedy for Mr. Silk's alleged violation of Mr. Carter's rights. Mr. Carter has not alleged any continuing violation of federal law. *Id.* Moreover, directing a state official to resign would be inconsistent with *Ex parte Young*'s "limited" application to situations where a "federal court commands a state official to do nothing more than refrain from violating federal law." *Va. Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 255 (2011).

Finally, damages against Mr. Silk in his official capacity are squarely barred by the Eleventh Amendment. *Caisse v. DuBois*, 346 F.3d 213, 218 (1st Cir. 2003). For these reasons, the Court will dismiss all official-capacity claims against Mr. Silk.

---

declaratory relief, which hints at an official-capacity claim under the *Ex parte Young* exception. Moreover, Defendants' motion to dismiss indicates they treated Mr. Carter's suit as alleging both official and individual-capacity claims. ECF No. 13 (raising Eleventh Amendment defense to official-capacity claims and qualified immunity defense to individual-capacity claims). Therefore, the Court treats Mr. Carter's Complaint as bringing both official and individual-capacity claims against Mr. Silk.

## II.    Younger Abstention

Federal courts, absent unusual circumstances, cannot interfere with pending state criminal prosecutions. *Younger v. Harris*, 401 U.S. 37, 43–45 (1971). Therefore, federal courts typically abstain from hearing cases whose resolution would hinder a state proceeding until the state proceeding concludes. "Abstention is appropriate when the requested relief would interfere (1) with an ongoing state judicial proceeding; (2) that implicates an important state interest; and (3) that provides an adequate opportunity for the federal plaintiff to advance his federal constitutional challenge." *Rossi v. Gemma*, 489 F.3d 26, 34–35 (1st Cir. 2007). The third factor is not dispositive, however. The First Circuit has held *Younger* abstention is appropriate even when a plaintiff seeks money damages, which are not usually available in state criminal proceedings. *Kyricopoulos v. Town of Orleans*, 967 F.2d 14, 16 n.1 (1st Cir. 1992).

Mr. Carter was prosecuted for the conduct leading to his arrest. According to Defendants, on January 23, 2025, a jury found Mr. Carter guilty of aggravated attempted murder, elevated aggravated assault, kidnapping, and aggravated assault. ECF No. 14 at 1. He has not yet been sentenced. Therefore, Mr. Carter's state judicial proceeding is "ongoing." *Rossi*, 489 F.3d at 34. And the state of Maine has an interest in running its own prosecutions free from federal interference. *See Juidice v. Vail*, 430 U.S. 327, 335 (1977) (noting state's "interest in the enforcement of its criminal laws"). Therefore, the first two factors suggest abstention is appropriate.

The third factor goes the other way. Mr. Carter's sole damages claim against Mr. Silk rests on an allegation that Mr. Silk used excessive force while arresting Mr. Carter. A state criminal proceeding does not usually provide "an adequate opportunity" to advance excessive force claims. *Rossi*, 489 F.3d at 34. An officer's use of excessive force during an

arrest is not a defense to most crimes.[6] Nor can a state criminal defendant invoke excessive force to trigger the exclusionary rule. *United States v. Garcia-Hernandez*, 659 F.3d 108, 114 (1st Cir. 2011). Moreover, as one district court explained, "even if [the plaintiff] were found guilty of attempted murder, [the defendant police officer's] use of force *after* the alleged attempted murder could still be determined by a jury to be constitutionally excessive." *Scheuerman v. City of Huntsville, Ala.*, 373 F. Supp. 2d 1251, 1256 (N.D. Ala. 2005); *see also Soriano v. Town of Cicero*, No. 04 C 2774, 2004 WL 2966967, at *2 (N.D. Ill. Nov. 22, 2004) (declining to abstain where criminal prosecution "deal[s] with Plaintiff's conduct before he was injured" by the allegedly excessive force).

Still, the Court finds abstention is warranted here. The only description of the circumstances of Mr. Carter's arrest comes from an exhibit attached to Mr. Carter's Complaint. ECF No. 1-2. Assuming that description is true, as the Court must at this stage, it appears Mr. Silk's use of excessive force coincides with the conduct leading to Mr. Carter's conviction. Therefore, "it is not impossible that circumstances might arise" where Mr. Carter could use some aspect of a judgment in this case "to obtain his release from, or prevent, his incarceration." *Guerro v. Mulhearn*, 498 F.2d 1249, 1253 (1st Cir. 1974).

Allowing Mr. Carter's claims to proceed risks violating "*Younger*'s obvious policy: '[T]o permit state courts to try state cases free from interference by federal courts.'" *United Books, Inc. v. Conte*, 739 F.2d 30, 33 (1st Cir. 1984) (quoting *Younger*, 401 U.S. at 43)). The specter of a pending federal court case with even arguable bearing on the state

---

[6] In limited circumstances, such as when a defendant is charged with resisting arrest, the elements of an excessive force claim may intertwine with the elements of the crime and abstention is warranted. *See Boothe v. Sherman*, 66 F. Supp. 3d 1069, 1074 (N.D. Ill. 2014) (abstaining under *Younger* where plaintiff was charged with resisting arrest); *Bullard v. Gonzalez*, No. 15-60038, 2015 WL 13831711, at *6 (S.D. Fla. Aug. 31, 2015) ("The issue of excessive force may be presented in Plaintiff's defense to state criminal charges.").

court prosecution would hang over Mr. Carter's sentencing. Therefore, the Court finds abstention on Mr. Carter's damages claims against Mr. Silk in his individual capacity is warranted.

A court abstaining from hearing a damages action on *Younger* grounds must enter a stay rather than dismiss the case pending resolution of the state judicial procedure. *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 730 (1996) ("[W]e have permitted federal courts applying abstention principles in damages actions to enter a stay, but we have not permitted them to dismiss the action altogether."); *see also Deakins v. Monaghan*, 484 U.S. 193, 202 (1988). The Court will therefore stay further proceedings on the remaining claims against Mr. Silk pending final resolution of Mr. Carter's state proceedings.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** Defendants' motion to dismiss to the extent it seeks dismissal of all claims against MSP and official-capacity claims against Mr. Silk. The Court **DENIES IN PART** Defendants' motion to dismiss to the extent it seeks dismissal of personal-capacity damages claims against Mr. Silk, with leave to refile when the stay is lifted. The Court **STAYS** the case pending resolution of Mr. Carter's state proceedings. The Court **ORDERS** Mr. Carter to file a status report by May 9, 2025, or within 21 days of final resolution of his state proceedings, whichever is earlier.

**SO ORDERED.**

Dated this 10th day of March, 2025.

/s/ Stacey D. Neumann
**U.S. DISTRICT JUDGE**

8